# TAX COURT OF NEW JERSEY


**JOSHUA D. NOVIN**
**Judge**

Dr. Martin Luther King, Jr. Justice Building
495 Dr. Martin Luther King, Jr. Blvd., 4th Floor
Newark, New Jersey 07102
Tel: (609) 815-2922, Ext. 54680

**NOT FOR PUBLICATION WITHOUT THE APPROVAL
OF THE TAX COURT COMMITTEE ON OPINIONS**

August 5, 2026

Jay J. Freireich, Esq.
Ruth R. Stein, Esq.
Freireich LLC
23 Vreeland Road
Florham Park, New Jersey 07932

Deputy Attorney General Judith M. O'Malley
New Jersey Division of Law
R.J. Hughes Justice Complex
P.O. Box 106
Trenton, New Jersey 08625-0106

> Re:    OCSBIG, Corp. v. Dir., Div. of Taxation
>        Docket No. 000066-2025

Dear Mr. Freireich, Ms. Stein, and Deputy Attorney General O'Malley:

This letter shall constitute the court's opinion on the Director, Division of Taxation's ("Director"), motion for summary judgment, and plaintiff, OCSBIG, Corp.'s ("plaintiff" or "OCSBIG"), cross-motion for summary judgment. At issue under these motions is (i) the timeliness of plaintiff's complaint and the court's subject matter jurisdiction under R. 8:4-1(b), N.J.S.A. 54A:9-10(a), and N.J.S.A. 54:51A-14; and (ii) whether plaintiff's sole shareholder had standing to and thus, asserted a claims for the plaintiff under a separate and distinct complaint.[1]

For the reasons explained below, the court grants the Director's motion for summary judgment and denies plaintiff's cross-motion for summary judgment.

---

[1] In its cross-motion, plaintiff initially contested the timeliness of the Director's tax assessments, under N.J.S.A. 54:49-6(b), and sought summary judgment, striking any "alleged tax liabilities assessed more than four years prior" to the Notice of Assessment. However, during oral argument plaintiff withdrew those claims for relief.






## I.    Findings of Fact and Procedural History

Pursuant to R. 1:7-4, the court makes the following findings of fact based on the submissions of the parties and its review of the pleadings.

Plaintiff operated Dino's Palace, a Gentlemen's Club serving alcoholic beverages at 691 Main Avenue, Passaic, New Jersey.  David Fontanella ("Fontanella") was the sole shareholder and a corporate officer of the plaintiff.  Fontanella oversaw plaintiff's day-to-day operations and financial affairs until the closure of Dino's Palace in 2017.

On or about March 17, 2020, following an audit of plaintiff's tax returns, the Director issued plaintiff a Notice of Assessment ("Notice of Assessment") asserting outstanding Corporate Business Tax ("CBT") liabilities, for the tax periods 1/2013 to 12/2016, in the sum of $235,638.39; Gross Income Tax – Employer Withholding ("GIT-ER") liabilities, for the tax periods 1/2014 to 12/2016, in the sum of $7,799.52; and Sales and Use Tax ("SUT") liabilities, for the tax periods 7/2013 to 6/2017, in the sum of $254,127.71.[2]

On or about May 13, 2020, the Director received a Form M-5008-R, Appointment of Taxpayer Representative, for the plaintiff ("Appointment of Representative Form").  The Appointment of Representative Form designated Frank Agostino, Esq. and Jeffrey Dirmann, Esq., both of Agostino & Associates, P.C. ("Agostino & Associates"), as plaintiff's "taxpayer representative" for "[a]ll tax matters."  The Appointment of Representative Form authorized the taxpayer representatives to "receive and inspect confidential tax records" and afforded them "full power to act with respect to the tax matters described [therein], and to do and perform all such acts as [taxpayer] could do or perform."  The Appointment of Representative Form was signed by

---

[2]  On March 17, 2020, the Director issued Fontanella a Notice of Finding of Responsible Person Status ("Responsible Person Notice").






Fontanella as the plaintiff's "owner."

On or about June 12, 2020, Agostino & Associates timely filed a written protest of the Notice of Assessment against plaintiff with the Director's Conference and Appeals Branch ("CAB").[3] The protest contested the Director's audit's findings.

On or about March 11, 2022, a conference was conducted between CAB and Agostino & Associates regarding the Notice of Assessment.[4]

On June 6, 2022, the Director issued plaintiff a Final Determination (the "Final Determination letter"). The Final Determination letter upheld the Director's audit finding that "[t]he taxpayer did not substantiate its contentions."[5] The Final Determination letter recites that it was sent "CERTIFIED MAIL R.R.R." and contains United States Postal Service tracking number 7190 1129 1810 0847 0537. The Final Determination letter was addressed as follows:

> OCSBIG, Corp.
> c/o David Fontanella
> 14 Twain Place
> Clifton, NJ 07013-1830

The bottom of the Final Determination letter reveals that a copy was reportedly forwarded to "Jeff Dirmann, Esq." of Agostino & Associates by "CERTIFIED MAIL, R.R.R. 7190 1129 1810 0847 0568."[6]

It is undisputed that, as of June 2022, Fontanella resided at 14 Twain Place, Clifton, New

---

[3] On or about June 12, 2020, Agostino & Associates also timely filed a written protest of the Director's Responsible Person Notice on behalf of Fontanella with CAB.

[4] The CAB conference also addressed the Responsible Person Notice issued to Fontanella.

[5] On June 6, 2022, the Director issued Fontanella a Final Determination letter finding that he "is a responsible person for the Trust Fund Tax liabilities of OCSBIG, Corp." ("RP Final Determination letter"). The RP Final Determination letter identified eleven reasons that led the Director to conclude Fontanella is a responsible person for plaintiff.

[6] The Director offered no evidence that the Final Determination letter sent to "Jeff Dirmann, Esq." was received by Agostino & Associates.






Jersey 07013.

On September 1, 2022, Fontanella filed a complaint with the Tax Court contesting the Responsible Person Notice. That complaint was assigned docket number 010172-2022 (the "Fontanella Responsible Person Complaint").

On September 27, 2022, Jeffrey Dirmann, Esq. emailed Kathleen I. Schwehm, the CAB Conferee stating: "I received your voicemail. I have only received the RP Notice. Can you please email me a copy of any other notices that were issued?"

On October 14, 2022 at 12:52 p.m., Kathleen I. Schwehm emailed Jeffrey Dirmann, Esq. stating that: "I apologize for the late response – I have been out sick and am just catching up. Attached please find the FD [Final Determination] for the business [OCSBIG] as requested."

On October 14, 2022 at 1:38 p.m., Jeffrey Dirmann, Esq. emailed Kathleen I. Schwehm stating that: "Can you please send me copies of the certified mail receipts?"

On October 14, 2022 at 1:44 p.m., Kathleen I. Schwehm emailed Jeffrey Dirmann, Esq. stating that: "I plugged the numbers in on the USPS website for tracking and they show that they were delivered. I don't have the file anymore so I will request the signed delivery cards from the mailroom and get them to you as soon as I receive them."

On or about October 14, 2022, Jeffrey Dirmann, Esq. sent a responsive email to Kathleen I. Schwehm stating, "Thanks."

On January 13, 2025, plaintiff filed a complaint with the Tax Court contesting the Final Determination letter and the CBT, GIT-ER, and SUT liabilities assessed under the Notice of Assessment.

On January 24, 2025, the Director moved for summary judgment against Fontanella under the Fontanella Responsible Person Complaint. The motion sought entry of an order finding






Fontanella a responsible person for plaintiff's trust fund SUT liabilities.[7]

In response, Fontanella charged that the Final Determination letter was never received by the plaintiff or plaintiff's taxpayer representatives. Agostino & Associates asserted that efforts by their office in 2025 to attempt to track plaintiff's Final Determination letter using the United States Postal Service's website were unsuccessful.[8] [9] Thus, Fontanella asserted that because the Responsible Person Notice is a collection device for a previously determined, fixed and final tax liability, it would be premature for the court to enter summary judgment against him, because plaintiff's final tax liability had not been fixed and finally determined by the Director.

On August 21, 2025, the court denied the Director's motion for summary judgment. Because the Director was unable to present the court with any evidence that the Final Determination letter was received by the plaintiff, the court found that:

> the notice of responsible person status is ancillary and accessory to the Director's determination of the final business trust fund tax liability . . . it would be wholly inappropriate for the final determination of responsible person status to issue prior to the Director's determination of the final business trust fund tax liability. Because a genuine issue of material fact exists as to when the trust fund tax liability of OCSBIG became fixed and final, the ancillary

---

[7] On February 13, 2025, the court entered a Case Management Order adjourning the Director's motion for summary judgment under the Fontanella Responsible Person Complaint to August 1, 2025, to permit the parties to conduct pre-trial discovery in this matter.

[8] According to the Director, the United States Postal Service's "USPS Tracking" webpage recites "Tracking Not Available  Tracking is not available for this item. This may be because the tracking number is invalid; USPS has not yet received payment; USPS has not received the item; the item does not include tracking; or other reasons. If you'd like to see the tracking information for an item sent in the past, go to USPS Tracking Plus Archives." (emphasis added).

[9] The United States Postal Service's website states that, "USPS Tracking Service" records are available for a period of 120-days following mailing and "Certified Mail Service" records are available for a period of 2-years following mailing. https://faq.usps.com/s/article/USPS-Tracking-The-Basics#Access_tracking_information. However, for an additional fee, the United States Postal Service's "USPS Tracking Plus" Archive service extends time that a party may access tracking history up to 10 years. https://faq.usps.com/s/article/USPS-Tracking-Plus-The-Basics. (last visited on August 5, 2026).






and accessory responsible person status of [Fontanella] cannot be resolved by summary judgment.

On September 3, 2025, the court scheduled trial in the above matter to commence on October 1, 2025, and to continue November 12, 2025.

On September 17, 2025, Agostino & Associates filed a motion in limine seeking to bar introduction at trial of any evidence of Fontanella's responsible person status until the court made a finding regarding the finality of plaintiff's SUT liabilities.

On October 1, 2025, following oral argument and prior to the commencement of trial, the court entered an order bifurcating and separating for purposes of trial:

> all matters and issues related to the alleged responsible person status of David Fontanella. The court shall first conduct a trial, and render a decision on the timeliness of OCSBIG, Corp.'s complaint challenging the Director's June 6, 2022 final determination letter issued to OCSBIG, Corp. and the audit tax deficiencies arising under the March 17, 2020 Notice of Assessment issued to OCSBIG, Corp. under the Sales and Use Tax Act, N.J.S.A. 54:32B-1 to -55, Corporate Business Tax Act, N.J.S.A. 54:10A-1 to 41, and Gross Income Tax Act, N.J.S.A. 54A:1-1 to 12-6.

On October 1, 2025, the court commenced trial in the above matter taking testimony from Fontanella and plaintiff's accountant.

On November 11, 2025, Agostino & Associates moved to be relieved as counsel for plaintiff in this matter and for Fontanella under the Fontanella Responsible Person Complaint under R. 1:11-2 and RPC 1.16.[10]

---

[10] On November 19, 2025, the court transferred the motions to Hon. Mala Sundar, P.J.T.C. to permit an in camera inspection or plenary hearing on the motions to be conducted, if necessary. On December 18, 2025, an executed Substitution of Attorney was filed by Jay J. Freireich, Esq. and Freireich LLC, as superseding attorney for plaintiff and Fontanella. Accordingly, on December 19, 2025, Hon. Mala Sundar, P.J.T.C. entered an order denying as moot the motions to be relieved as counsel filed by Agostino & Associates.






On February 4, 2026, the court conducted a telephone conference call with Fontanella's and plaintiff's new counsel and the Director's counsel. During the telephone conference, the court set March 27, 2026, as the date for continuation of trial.

On March 27, 2026, the Director's counsel advised plaintiff's counsel and the court that it had "a few preliminary matters" to address with the court before taking testimony. The Director's counsel advised that, "over the past few days we have been conducting a search of some records and we found some records that could implicate whether the court has or has not subject matter jurisdiction due to lack of timeliness . . . , and so we are gathering those documents and would like to provide them in a coherent fashion to the court. . . ." The Director's counsel advised that these documents included email exchanges between the CAB conferee, and Agostino & Associates regarding issuance of plaintiff's Final Determination letter. The Director's counsel explained that the search had been very labor intensive, as it involved an examination of the Director's Outlook mail server, and that the Director wanted to obtain third-party confirmation of the alleged service of plaintiff's Final Determination letter before filing a motion with the court. Accordingly, the court adjourned the March 27, 2026 trial to permit the Director to organize the documents, gather the third-party confirmation, and furnish copies of such documentation to plaintiff's new counsel.

On April 30, 2026, the court conducted another telephone conference call with plaintiff's new counsel and the Director's counsel. During the telephone conference, plaintiff's new counsel acknowledged receipt of documents from the Director and requested the Director's counsel outline its legal position with respect to what it asserts these documents demonstrate. The court afforded the Director's counsel until May 18, 2026, to outline its legal position to plaintiff's new counsel if it chose to, otherwise the court would enter a second Case Management Order fixing a trial date.

On May 19, 2026, the court issued a second Case Management Order in this matter. The






second Case Management Order provided that:

> If the Director seeks to challenge or contest the timeliness of OCSBIG Corp.'s complaint under N.J.S.A. 54:51A-14, N.J.S.A. 54A:9-10(a), <u>R.</u> 8:4-1(b), or any other statute or court rule, the the Director shall file a notice of motion, brief, form of order, and certification (including all exhibits thereto) with the court no later than June 17, 2026, and bearing a return date no later than July 17, 2026. . . .

On June 17, 2026, the Director filed the instant motion for summary judgment. The Director maintains that by utilizing the United States Postal Service's "USPS Tracking Plus Archive" service, it was able to obtain proof that the Final Determination letter was served on the plaintiff. The Director argues that USPS Tracking Plus Archive service demonstrates that the Final Determination letter was served on plaintiff by certified mail, return receipt requested, on June 9, 2022. Thus, the Director asserts that plaintiff's complaint was untimely filed on January 13, 2025, well beyond the applicable 90-day limitations period afforded under <u>R.</u> 8:4-1(b), N.J.S.A. 54A:9-10(a), and N.J.S.A. 54:51A-14. Therefore, the Director maintains that the court is deprived of subject matter jurisdiction in this matter.

Attached to the Director's motion for summary judgment is an email from the United States Postal Service ([auto-reply@usps.com](mailto:auto-reply@usps.com)) dated April 24, 2026 at 2:04 p.m. containing the subject line "Archive USPS Tracking Plus Signature for 71901129181008470537." The body of the email contains the United States Postal Service's name and logo and the notation "Tracking # 71901129181008470537." The body of the email further recites the following:

> Thank you for using USPS.com to request an Archive USPS Tracking Plus Signature for your shipment.
>
> Tracking #: 71901129181008470537
> Attachment: Archive USPS Tracking Plus Signature (PDF) provided by the U.S. Postal Service.






Your Archive USPS Tracking Plus Signature is in the attached PDF. You will need Adobe Acrobat Reader installed on your device to open the PDF.

Attached to the email is a document containing the United States Postal Service's logo in the upper lefthand column and states "Archive USPS Tracking Plus Signature as of April 24, 2026" in the upper righthand column. Below the USPS logo is the following information:

Tracking Number: 71901129181008470537

| Date & Time | Delivery Location |
| --- | --- |
| Jun 09, 2022 5:34 pm | CLIFTON, NJ 07011 |

Below the date, time, and delivery location is a signature box and address box containing an illegible signature and address.[11]

The Director argues that the "Archive USPS Tracking Plus Signature as of April 24, 2026" demonstrates that the Final Determination letter was properly issued to plaintiff by certified mail, return receipt requested, and was received by plaintiff or plaintiff's representative on June 9, 2022. Accordingly, the Director maintains that plaintiff's complaint was untimely filed, on January 13, 2025, beyond the applicable 90-day limitations period afforded under R. 8:4-1(b), N.J.S.A. 54A:9-10(a), and N.J.S.A. 54:51A-14.

Alternatively, the Director advances the argument that the October 14, 2022 email from Kathleen I. Schwehm to Jeffrey Dirmann, Esq. of Agostino & Associates, attaching a copy of plaintiff's Final Determination letter, constitutes valid service of the Final Determination letter.

---

[11] The Archive USPS Tracking Plus Signature receipt is included in an email chain that originated on April 24, 2026. On April 24, 2026, one of the Director's employees, Tomas Ciesarik, ordered an "Archive USPS Tracking Plus Signature" for tracking number 71901129181008470537 from the United States Postal Service for a $20.00 fee. On April 24, 2026, the Archive USPS Tracking Plus Signature receipt was forwarded by Mr. Ciesarik to Christopher Davis, another of the Director's employees, who forwarded it to Jose Rivera, the Assistant Director of Operations.






The Director maintains that plaintiff's authorized taxpayer representative possessed actual knowledge of, and received a copy of the Final Determination letter, more than two years prior to plaintiff filing the complaint in this matter. The Director highlights that under the complaint filed in this matter, Agostino & Associates "confirmed . . . authority to accept service for the [Final Determination letter], stating that he 'has continuously represented both Mr. Fontanella and OCSBIG Corp. throughout these proceedings, with valid powers of attorney on file with the Division [of Taxation].'"

Therefore, should the court find that plaintiff rebutted the presumption of receipt that attaches to the Final Determination letter, under N.J.S.A. 54:50-2.1, measuring the applicable 90-day limitations period from the October 14, 2022 date when Agostino & Associates received and had actual knowledge of the Final Determination letter, the Director argues that plaintiff's January 13, 2025 complaint remains untimely filed under R. 8:4-1(b), N.J.S.A. 54A:9-10(a), and N.J.S.A. 54:51A-14.

On July 7, 2026, plaintiff filed opposition to the Director's motion and cross-moved for summary judgment. Fontanella submits that he "fully contest[s]" that the electronic signature in the Archive USPS Tracking Plus Signature system is his signature and that he has "no recollection of receiving such notice, neither do I have any record of having received such notice in my possession." In sum, plaintiff argues that despite the evidence contained in the United States Postal Service's Archive USPS Tracking Plus Signature system, it did not receive the Final Determination letter. As such, plaintiff maintains that a genuine issue of material fact is at issue, service of the Final Determination letter, warranting denial of the Director's motion for summary judgment.

Alternatively, plaintiff argues that should the court find that the Final Determination letter






was received by plaintiff in or about June 2022, the court should view the Fontanella Responsible Person Complaint as advancing claims by plaintiff challenging or contesting the Final Determination letter. Thus, plaintiff seeks entry of summary judgment finding that the Fontanella Responsible Person Complaint timely asserts claims by plaintiff challenging the Director's Final Determination letter.

## II. Conclusions of Law

### A. Summary judgment standard

Summary judgment "'serve[s] two competing jurisprudential philosophies': first, 'the desire to afford every litigant who has a *bona fide* cause of action or defense the opportunity to fully expose his case,' and second, to guard 'against groundless claims and frivolous defenses,' thus saving the resources of the parties and the court." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 541-42 (1995) (emphasis in original)).

New Jersey Court Rule 4:46-2 outlines the circumstances under which summary judgment should be granted:

> if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.
>
> [R. 4:46-2.]

In Brill, our Supreme Court adopted the federal approach to resolving motions for summary judgment, in which the "essence of the inquiry [is] whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." 142 N.J. at 536 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S.






242, 251-52 (1986)).  In conducting this inquiry, the trial court must engage in a "kind of weighing that involves a type of evaluation, analysis and sifting of evidential materials."  Ibid.  The standard established by our Supreme Court in Brill is as follows:

> when deciding a motion for summary judgment under R. 4:46-2, the determination of whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential material presented, when viewed in the light most favorable to the non-moving party in consideration of the most applicable evidentiary standard, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [Id. at 536.]

In considering all the material evidence before it with which to determine if there is a genuine issue of material fact, the court must view most favorably those items presented to it by the party opposing the motion and all doubts are to be resolved against the movant.  Ruvolo v. American Casualty Co., 39 N.J. 490, 491 (1963).  A court charged with "deciding a summary judgment motion does not draw inferences from the factual record as does the factfinder in a trial, . . . [i]nstead, the motion court draws all legitimate inferences from the facts in favor of the non-moving party."  Globe Motor Co., 225 N.J. at 480 (internal citations omitted).  Thus, the moving party bears the burden "to exclude any reasonable doubt as to the existence of any genuine issue of material fact" with respect to the claims being asserted.  United Advertising Corp. v. Borough of Metuchen, 35 N.J. 193, 196 (1961).

"By its plain language, R. 4:46-2 dictates that a court should deny a summary judgment motion only where a party opposing the motion has come forward with evidence that creates a 'genuine issue as to any material fact challenged.'"  Brill, 142 N.J. at 529.  However, when the party opposing the motion merely presents "facts which are immaterial or of an insubstantial






nature, a mere scintilla, fanciful, frivolous, gauzy or merely suspicious," then an otherwise meritorious application for summary judgment should not be defeated. Judson v. Peoples Bank and Trust Co., 17 N.J. 67, 75 (1954). Hence, "when the evidence is so one-sided that one party must prevail as a matter of law . . . the trial court should not hesitate to grant summary judgment." Brill, 142 N.J. at 540 (quoting Liberty Lobby, Inc., 477 U.S. at 252).

Having reviewed the pleadings, affidavits, and undisputed material statements of fact, the court concludes that no genuine issues of material fact are in dispute. Rather, this matter involves an application of law to the undisputed facts developed in the motion record, and thus, is ripe for summary judgment.

> B.     Jurisdiction

The court's analysis begins with a principle that is axiomatic, the Tax Court is a court of limited jurisdiction. N.J.S.A. 2B:13-2. As our Supreme Court has observed, the narrow jurisdiction of the Tax Court is "defined by statute . . . It is against this comprehensive mosaic of procedural safeguards -- one with which continuing strict and unerring compliance must be observed." McMahon v. City of Newark, 195 N.J. 526, 529 (2008). Therefore, to enable the court to address the merits of any party's legal arguments, the court must be satisfied that it is vested with subject matter jurisdiction. "When a court lacks subject matter jurisdiction, its authority to consider the case is 'wholly and immediately foreclosed.'" Branchburg Hosp. LLC v. Twp. of Branchburg, 32 N.J. Tax 546, 551 (2022) (quoting Robertelli v. N.J. Office of Atty. Ethics, 224 N.J. 470, 479 (2016)).

This court's jurisdiction to review any decision, order, finding, assessment or action of the Director is clearly delineated under our statutes. N.J.S.A. 54:51A-14, provides, in part, that:

> all complaints shall be filed within 90 days after the date of the






action sought to be reviewed.

[N.J.S.A. 54:51A-14.]

Similarly, N.J.S.A. 54A:9-10(a) provides that:

> [a]ny aggrieved taxpayer may, within 90 days after any decision, order, finding, assessment or action of the Director of the Division of Taxation made pursuant to the provisions of this act, appeal therefrom to the tax court in accordance with the provisions of the State Tax Uniform Procedure Law., R.S. 54:48-1, et seq.

[N.J.S.A. 54A:9-10(a).]

Our court rules mirror this statutory scheme, requiring that "[c]omplaints seeking to review actions of the Director of the Division of Taxation . . . with respect to a tax matter . . . shall be filed within 90 days after the date of the action to be reviewed." R. 8:4-1(b).

The 90-day limitations period is "calculated from the date of service of the decision or notice of the action taken." R. 8:4-2. In Liapakis v. State Dep't of Treasury, Div. of Tax'n, our Appellate Division concluded that R. 8:4-2 applies to calculation of the 90-day period and therefore, "service of the determination letter by certified mail was complete on the day Liapakis received and signed the postal service receipt. . . ." 363 N.J. Super. 96, 100 (App. Div. 2003), certif. denied, 179 N.J. 369 (2004). Accordingly, the 90-day limitations period begins to run upon the taxpayer's receipt of the notice.

An exacting compliance with the statutory provisions and court rules is a fundamental prerequisite to conferring jurisdiction on this court. It is well-settled that "statutes of limitation applicable to suits against the government are conditions attached to the sovereign's consent to be sued and must be strictly construed." H.B. Acquisitions, Inc. v. Dir., Div. of Tax'n, 12 N.J. Tax 60, 65 (Tax 1991). The "court has no power . . . to relax or dispense with a statute of limitations passed by the Legislature and approved by the Governor." Prospect Hill Apartments v. Borough






of Flemington, 172 N.J. Super. 224, 227 (Tax 1979).

A taxpayer's failure to comply with the applicable limitations period is "of particular concern in tax matters, given 'the exigencies of taxation and the administration of . . . government.'" Millwork Installation, Inc. v. State Dep't of the Treasury, Div. of Tax'n, 25 N.J. Tax 452, 459 (Tax 2010) (quoting F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 424 (1985)). The court's strict adherence to "limitation period[s] is mandatory and is justified by the need for predictability of revenues by the State." McCullough Transportation Co. v. Motor Vehicles Div., 113 N.J. Super. 353 (App. Div. 1971). In the taxation arena, "statutes of limitation and limitation periods play a vital role. Legislative policy has consistently followed the salutary principle that proceedings concerning tax assessments and governmental fiscal matters be brought expeditiously within established time periods." L.S. Village, Inc. v. Lawrence Twp., 8 N.J. Tax 287 (Law Div. 1985), aff'd, 8 N.J. Tax 327 (App. Div. 1986). Thus, after expiration of the applicable limitations period, the Director is entitled to assume that an assessment is final and is not subject to further scrutiny by the court. Commercial Refrigeration & Fixture Co., Inc. v. Dir., Div. of Tax'n, 2 N.J. Tax 415, 419 (Tax 1981).

The taxpayer's "[f]ailure to file a timely appeal is a fatal jurisdictional defect," barring consideration of the merits of the action. F.M.C. Stores Co., 100 N.J. at 425 (citing Clairol v. Kingsley, 109 N.J. Super. 22 (App. Div. 1970), aff'd, 57 N.J. 199 (1970)). A complaint that is filed one day late must be dismissed for want of jurisdiction. Mayfair Holding Corp. v. Twp. of North Bergen, 4 N.J. Tax 38 (Tax 1982). Even in the absence of harm to the Director, the failure to timely file a complaint within the prescribed 90-day limitations period deprives the court of jurisdiction. See Lawrenceville Garden Apartments v. Twp. of Lawrence, 14 N.J. Tax 285 (App. Div. 1994).

   

The State Tax Uniform Procedure Law, N.J.S.A. 54:48-1 to 54-6 ("STUPL"), identifies the manner under which written notice by the Director must be made on a taxpayer. The STUPL provides in part, that: "[a]ny notice required to be given by the [D]irector pursuant to the [STUPL] may be served personally or by mailing the same to the person for whom it is intended, addressed to such person at the address given in the last report filed by that person. . . ." N.J.S.A. 54:50-6(a). Moreover, the STUPL requires that, "[a]ll notices of assessment related to final audit determination . . . letters will be sent by registered or certified mail." N.J.SA. 54:50-6.1.

Importantly, the STUPL provides that, "[t]he mailing of such notice shall be presumptive evidence of the receipt of the same by the person to whom it was addressed." N.J.S.A. 54:50-6(a). A final determination letter, the notice type at issue in this matter, is identified under the STUPL as a notice to which the presumption of receipt attaches. N.J.S.A. 54:50-6(e). See Porcaro v. Dir., Div. of Tax'n, 33 N.J. Tax 302, 312-313 (Tax 2024); State v. Eatontown Borough, 366 N.J. Super. 626, 639 (App. Div. 2004). See also Waite v. Doe, 204 N.J. Super. 632, 636-37 (App. Div. 1985); Cwiklinski v. Burton, 217 N.J. Super. 506, 509 (App. Div. 1987); Estate of Boyle v. Board of Trustees, State, Dept. of Treasury, 234 N.J. Super. 93, 100 (App. Div. 1989).

Notably, the STUPL does not express that this presumption of receipt can be overcome by a taxpayer. However, our courts have consistently recognized, in other settings, that the presumption of receipt is "rebuttable and may be overcome by evidence that the notice was never in fact received." Szczesny v. Vasquez, 71 N.J. Super. 347, 354 (App. Div. 1962); SSI Medical Servs. v. HHS, Div. of Medical Assistance & Health Servs., 146 N.J. 614, 625 (1996).

Accordingly, despite the absence of language under the STUPL, this court construes the presumption of receipt created by our Legislature under N.J.S.A. 54:50-6(a) as rebuttable. Thus, under N.J.S.A. 54:50-6(a), a taxpayer shoulders the burden of overcoming the presumption of






receipt. However, our legal jurisprudence is not entirely well-defined on what proof is necessary to overcome the presumption of receipt. Although it involves local property tax, our Supreme Court observed that the presumption of correctness that attaches to the quantum of the assessment is only rebutted by cogent evidence that must be "definite, positive and certain in quality and quantity. . . ." Aetna Life Ins. Co. v. Newark City, 10 N.J. 99, 105 (1952); Pantasote Co. v. Passaic City, 100 N.J. 408, 413 (1985). Similarly, under the context of the Director's audit of a taxpayer's business, this court observed that the "naked assertions' of the taxpayer, without supporting records or documentation, are insufficient to rebut the presumption. . . ." Yilmaz v. Dir., Div. of Tax'n, 22 N.J. Tax 204, 231 (Tax 2005). Therefore, this court finds that a taxpayer can rebut the presumption of receipt under N.J.S.A. 54:50-6(a) by introducing cogent evidence that issuance and service of the certified mail was defective.

Here, the motion record reveals that the Director issued plaintiff the Final Determination letter on June 6, 2022. The record further reveals that the Director's Final Determination letter was sent "CERTIFIED MAIL R.R.R." bearing tracking number 7190 1129 1810 0847 0537. The Final Determination letter was addressed to plaintiff, c/o David Fontanella, 14 Twain Place, Clifton, New Jersey, which was Fontanella's residence as of June 2022. The United States Postal Services' records reveal that the parcel containing tracking number 7190 1129 1810 0847 0537 was delivered on June 9, 2022, at 5:34 p.m. to the Clifton, New Jersey address. Moreover, the United States Postal Services records indicate that an individual signed for the Final Determination letter at that time.

Moreover, plaintiff acknowledges that the Director's Final Determination letter was dated June 9, 2022; that the Final Determination was correctly addressed; the address contained in the Final Determination letter was Fontanella's residence; and that the Director sent the Final






Determination letter by United States Postal Service certified mail, return receipt requested, as required under N.J.S.A. 54:50-6.1. Plaintiff only advances arguments that Fontanella "fully contest[s]" that the electronic signature maintained by the United States Postal Service is his signature and that he has "no recollection of receiving such notice, neither do I have any record of having received such notice in my possession."

However, such lack of recollection and alleged lack of records does not create a genuine issue of material fact in this matter. Fontanella's self-serving statements do not offer objective credible evidence demonstrating that the Final Determination letter was not delivered to his residence as detailed under the United States Postal Service records. Because Fontanella asserts that the signature on the Archive USPS Tracking Plus Signature does not reflect his signature and that he has no recollection of receiving the Final Determination letter, does not mean that the Final Determination letter was not delivered to and received by another adult at his residence, and on his behalf. As this court has observed, "the recipient [of certified mail] does not necessarily have to be the addressee. To the contrary, 'an addressee's mail may be delivered to an employee, to a competent member of the addressee's family, or to any person authorized to represent the addressee." Green v. E. Orange, 21 N.J. Tax 324, 333-34 (2004). Therefore, the court finds that plaintiff has failed to offer cogent evidence rebutting the presumption of receipt of the Final Determination letter in this matter under N.J.S.A. 54:50-6(a).

Accordingly, the court finds that plaintiff received the Final Determination letter on June 9, 2022 in this matter. Thus, the court will begin counting the 90-day limitations period from June 9, 2022, the date the certified mail was delivered by the United States Postal Service. See Liapakis,






363 N.J. Super. at 99.[12]  Affording plaintiff the most favorable inferences, the 90-day limitations period for establishing jurisdiction with this court concluded on Wednesday, September 7, 2022. However, the plaintiff's complaint was not filed until January 13, 2025, approximately eight hundred fifty-nine (859) days after the 90-day limitations period expired.  Therefore, the court is satisfied that plaintiff's complaint must be dismissed with prejudice for want of subject matter jurisdiction under N.J.S.A. 54:51A-14, N.J.S.A. 54A:9-10(a), and R. 8:4-1(b).

The court emphasizes that a prerequisite for this court to be permitted to address the plaintiff's allegations and claims is that the court has been properly conferred subject matter jurisdiction.  Unfortunately, without subject matter jurisdiction, the court lacks the authority to address the merits of plaintiff's claims and allegations.[13]

C.    Standing

In opposition to the Director's motion and in support of its cross-motion, plaintiff argues that should the court find that the Final Determination letter was received by plaintiff on June 9, 2022, then the court should view the Fontanella Responsible Person Complaint as timely advancing claims by the plaintiff challenging the Final Determination letter.[14]  Specifically,

---

[12]  Having found that the Final Determination letter was received by plaintiff on June 9, 2022, the court need not address the Director's alternate argument that the Final Determination letter was served on plaintiff's taxpayer representative, Agostino & Associates, by email on October 14, 2022.

[13]  Having found that plaintiff's complaint was untimely filed under R. 8:4-1(b), N.J.S.A. 54A:9-10(a), and N.J.S.A. 54:51A-1, and thus, the court was deprived of subject matter jurisdiction, the court does not address the Director's alternate legal argument that the Final Determination letter was validly served by email on Agostino & Associates on October 14, 2022.

[14]  However, the Director's motion and plaintiff's cross-motion were filed only in this matter. Plaintiff did not file a companion motion under the Fontanella Responsible Person Complaint. This matter and the Fontanella Responsible Person Complaint were not previously consolidated under R. 8:8-3(a).  Following the court's inquiry during oral argument, the parties consented to consolidation of this matter and the Fontanella Responsible Person Complaint for the narrow and limited purpose of addressing the merits of plaintiff's arguments.






plaintiff asserts because the Fontanella Responsible Person Complaint asserts that because: (i) Fontanella "contests that any additional Corporation Business Tax may be due from OCSBIG;" (ii) Fontanella "contests Defendant's determination in full that any additional sales and use tax are due"; and (iii) Fontanella "demands that . . . the Court hear this case and determine any assessments, interest and penalties against [Fontanella] or OCSBIG, Corp. be set aside or reduced. . . ", the court should view those claims as being advanced by OCSBIG.

To be permitted to advance claims and issues before the court, a litigant must have standing. Standing refers to a "plaintiff's ability or entitlement to maintain an action before the court." N.J. Citizen Action v. Riviera Motel Corp., 296 N.J. Super. 402, 409 (App. Div. 1997) (citing New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n, 82 N.J. 57, 67 (1980)). To enjoy standing the plaintiff "must have a sufficient stake in the outcome of the litigation, a real adverseness with respect to the subject matter, and there must be a substantial likelihood that the plaintiff will suffer harm in the event of an unfavorable decision." Ibid. "Standing is . . . a threshold issue. It neither depends on nor determines the merits of a plaintiff's claim . . . Standing, like jurisdiction, involves a threshold determination of the court's power to hear the case." Watkins v. Resorts Int'l Hotel & Casino, 124 N.J. 398, 417-418 (1991) (internal citations omitted). "Standing involves 'limits on the exercise of . . . jurisdiction.' A dismissal for lack of standing, like one for lack of jurisdiction amounts to a refusal by the court to resolve the matter." Id. at 418 (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)). However, standing is not a matter of jurisdiction, only justiciability, which does not expressly prohibit, but only warns against invoking the court's authority to act.

The New Jersey Corporation Business Tax Act, N.J.S.A. 54:10A-1 to -41 ("CBT Act") provides that:






> Any <u>aggrieved taxpayer</u> may, within 90 days after any action of the director made pursuant to the provisions of this act, appeal therefrom to the tax court in accordance with the provisions of the State Tax Uniform Procedure Law, R.S. 54:48-1 et seq.
>
> [N.J.S.A. 54:10A-19.2 (emphasis added).]

Similarly, the New Jersey Sales and Use Tax Act, N.J.S.A. 54:32B-1 to -55 ("SUT Act")

provides that:

> Any <u>aggrieved taxpayer</u> may, within 90 days after any decision, order, finding, assessment or action of the Director of Taxation made pursuant to the provisions of this act, appeal therefrom to the tax court in accordance with the provisions of the State Tax Uniform Procedure Law, R. S. 54:48-1 et seq.
>
> [N.J.S.A. 54:32B-21(a) (emphasis added).]

The New Jersey Gross Income Tax Act, N.J.S.A. 54A:1-1 to -12-6 ("GIT Act") likewise

provides that:

> Any <u>aggrieved taxpayer</u> may, within 90 days after any decision, order, finding, assessment or action of the Director of the Division of Taxation made pursuant to the provisions of this act, appeal therefrom to the tax court in accordance with the provisions of the State Tax Uniform Procedure Law, R.S. 54:48-1 et seq.
>
> [N.J.S.A. 54A:9-10 (emphasis added).]

Moreover, the appeal rights that are afforded above constitute the "exclusive remedy available to any taxpayer for review of an action of the Director of the Division of Taxation. . . ." N.J.S.A. 54:51A-16. <u>See also</u> N.J.S.A. 54:32B-21(a) (stating that the appeal rights "shall be the exclusive remedy available to any taxpayer for review of a decision of the [D]irector in respect of the determination of the liability of the taxpayer for the taxes imposed by this act."); N.J.S.A. 54A:9-10(c) (stating that "[t]he appeal provided by this section shall be the exclusive remedy available to any taxpayer for review of a decision of the director in respect of the determination of






the liability of the taxpayer for the taxes imposed by this act.").

In sum, to possess standing and consequently, the ability to maintain an action before the court challenging the Director's assessment of CBT, SUT, or GIT-ER, our Legislature has required that the party be an "aggrieved taxpayer." Although the CBT Act, SUT Act, and GIT Act do not define the term "aggrieved taxpayer," and there is an absence of binding precedent under our state tax legal jurisprudence, in the local property tax forum several decisions have addressed this issue. There, our courts have recognized that that under N.J.S.A. 54:3-21, an aggrieved taxpayer "can be reasonably inferred that it has been and still is the Legislature's purpose to afford the right to appeal essentially to any person whose tax payments are adversely affected by an improper assessment. . . ." Ewing Tp. v. Mercer Paper Tube Corp., 8 N.J. Tax 84, 91 (1985). Our Supreme Court has observed that the decision whether a party is "an aggrieved taxpayer under N.J.S.A. 54:3-21 must be resolved in light of all attendant circumstances." Village Supermarkets, Inc. v. West Orange Twp., 106 N.J. 628, 635 (1987). The Court identified five criteria that trial courts should consider in determining whether a party has standing to prosecute an appeal.[15] Although several of those criteria are inapplicable to matters involving the Director's assessment of CBT, SUT, and GIT-ER tax, the court finds that two of those factors are particularly relevant under the current setting.

---

[15] The Court stated that the circumstances to be evaluated:

> will include such factors as (1) . . . the burden of the tax surcharge . . . ; (2) . . . whether [the tenant] it is the lead tenant in a shopping center or only one slightly affected by the assessment; (3) whether the tenant will adequately represent the interests of the landlord and other tenants, or whether the tenant has interests adverse to either group; (4) the tenant's ability to mount and prosecute an effective appeal; (5) the landlord's overall relationship with the taxing authority. . . .

> [Village Supermarkets, Inc., 106 N.J. at 634-35.]






First, whose tax payments are being adversely affected, and second, who bears the burden of the tax liability. Accordingly, the court will evaluate the "attendant circumstances" in this matter to discern who is an "aggrieved taxpayer" under the CBT Act, SUT Act and GIT Act.

Here, it is undisputed that during the tax periods at issue, OCSBIG was a validly existing and duly formed corporation of the State of New Jersey. The CBT Act requires every non-exempt corporation wielding its franchise in New Jersey, deriving New Jersey sourced revenue, or doing business in New Jersey, to annually file a corporate business tax return and pay a tax. Specifically, N.J.S.A. 54:10A-2 provides that:

> Every domestic or foreign corporation which is not hereinafter exempted shall pay an annual franchise tax for each year . . . for the privilege of having or exercising its corporate franchise in this State, or for the privilege of deriving receipts from sources within the State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State.
>
> [N.J.S.A. 54:10A-2.]

Therefore, unless statutorily "expressly exempted," every corporation is required to pay New Jersey an annual franchise tax. N.J.A.C. 18:7-1.6(a). Importantly, our Legislature elected to impose the CBT on corporations for the privilege of exercising their corporate charter, deriving receipts from New Jersey sources, and conducting business in the state. In this matter, it is undisputed that during the tax periods at issue, OCSBIG exercised its corporate franchise in New Jersey, derived New Jersey sourced revenue, and conducted business in New Jersey. Accordingly, OCSBIG alone bore the burden of reporting its franchise tax liability and timely remitting same to the Director.

The SUT Act imposes a tax on the receipts from every sale of tangible personal property and certain enumerated services in New Jersey, unless otherwise specifically exempted. See






N.J.S.A. 54:32B-3; N.J.S.A. 54:32B-6. All sales transactions are deemed taxable under the SUT Act, unless the non-taxable or tax-exempt status of any transaction is established by the person required to collect the tax or the customer. N.J.S.A. 54:32B-12(b). Thus, a presumption exists under the SUT Act that a sale is taxable unless the party required to collect the tax can affirmatively demonstrate otherwise. Newman v. Dir., Div. of Tax'n, 14 N.J. Tax 313, 318 (Tax 1994).

Merchants like OCSBIG are responsible for collecting "SUT's and hold[ing] them in trust 'as trustee for and on account of the State.'" Gill v. Dir., Div. of Tax'n, 481 N.J. Super. 17, 19 (2025) (quoting N.J.S.A. 54:32B-12(a)). The merchant "is responsible for collecting the tax from the customer who is responsible for paying the tax." Id. at 24. Thereafter, the merchant is required to file monthly tax returns with the Director itemizing and remitting the SUT collected. See N.J.S.A. 54:32B-17(a). During the tax periods at issue, it is undisputed that OCSBIG was the taxpayer/merchant responsible for collecting and remitting to the Director the SUT due under N.J.S.A. 54:32B-3 and N.J.S.A. 54:32B-17(a) and filing the required tax returns.

On or about March 17, 2020, following an audit of its tax returns, the Director issued OCSBIG the Notice of Assessment asserting outstanding CBT, SUT, and GIT-ER liabilities. Thereafter, on June 6, 2022, the Director issued OCSBIG the Final Determination letter upholding its determination that OCSBIG was liable for CBT, SUT, and GIT-ER liabilities arising from its operations. The Notice of Assessment, and consequently, the Final Determination letter impacted and adversely affected OCSBIG's tax payments and imposed additional tax liabilities on OCSBIG. As such, the court finds that OCSBIG was the "aggrieved taxpayer" as such term is construed under N.J.S.A. 54:10A-19.2, N.J.S.A. 54:32B-21(a), and N.J.S.A. 54A:9-10.

Contrary to the arguments advanced by plaintiff during oral argument, Fontanella lacked standing under the Fontanella Responsible Person Complaint to assert claims for OCSBIG. The






decision to institute or refrain from litigating a claim or right on behalf of a corporation rests with the management of the corporation. A basic tenet of corporate law is that "[a] corporation is regarded as an entity separate and distinct from its shareholders. It is a principle of corporation law that [r]egard for the corporate personality demands that suits to redress corporate injuries . . . are brought only by the corporation. . . . ." Strasenburgh v. Straubmuller, 146 N.J. 527, 549 (1996); see also Lyon v. Barrett, 89 N.J. 294, 300 (1982) (stating that "a corporation is an entity separate from its stockholders . . . one who accepts the benefits of incorporation must also accept the burdens that flow from the use of a corporate structure.").

Our statutes expressly provide that, "[t]he business and affairs of a corporation shall be managed by or under the direction of its board. . . ." N.J.S.A. 14A:6-1. Corporate officers are tasked with responsibility to "make business and financial decisions daily which entail tax consequences under the Corporation Business Tax Act." General Trading Co. v. Dir., Div. of Tax'n, 83 N.J. 122, 134 (1980). "It is fundamental that, no matter how the shares of stock are held, the corporation itself is an entity wholly separate and distinct from the individuals who compose and control it." Jackson v. Hooper, 76 N.J. Eq. 592, 599 (1910).

Moreover, any assertion that Fontanella possessed standing to contest OCSBIG's tax liabilities because he received the Responsible Person Notice from the Director is misplaced. When a merchant fails to collect and/or remit the SUT, an "officer or responsible person of a business is held personally liable for these taxes. . . ." Gill, 481 N.J. Super. at 28. Importantly, "the Responsible Person Notice is a collection tool for a previously determined, fixed, and final tax liability assessed against the business and not an additional assessment." Id. at 20. Stated differently, "an officer or responsible person of a business is held personally liable for these taxes when the business fails to remit them to the State." Id. at 19. Thus, Fontanella's responsibility for






the SUT liability was only triggered after the Director finally determined OCSBIG's SUT liability. Upon receipt of the Responsible Person Notice and RP Final Determination letter Fontanella was vested only with the right to contest or challenge the Responsible Person Notice and RP Final Determination letter, not the underlying corporate tax obligations.

Therefore, for the above-stated reasons, the court finds that Fontanella lacked standing to raise claims for OCSBIG contesting the Director's Final Determination letter under the Fontanella Responsible Person Complaint before the court.

### III.  Conclusion

OCSBIG's complaint was not timely filed within the ninety (90) day limitations period following receipt of the Final Determination letter, as required under N.J.S.A. 54:51A-14, N.J.S.A. 54A:9-10(a), and R. 8:4-1(b).  Therefore, following expiration of the ninety-day period the Director's Final Determination letter became final and fixed.  Accordingly, plaintiff's complaint is dismissed for want of jurisdiction.

Additionally, Fontanella lacked standing to raise claims for OCSBIG contesting the Director's Final Determination letter under the Fontanella Responsible Person Complaint.

Very truly yours,

/s/

Hon, Joshua D. Novin, J.T.C.
